OPINION JUDGMENT ENTRY
{¶ 1} Defendants-appellants Christian Broadcasting Ministries, et al. ("CBM") appeals the March 26, 2003 Judgment Entry entered by the Ashland County Court of Common Pleas, which overruled CBM's motion for summary judgment. CBM also appeals the October 2, 2003 Judgment Entry, which granted summary judgment in favor of plaintiff-appellee Board of Trustees of Vermillion Township ("the Board").
 {¶ 2} STATEMENT OF THE FACTS AND CASE
{¶ 3} On September 13, 2001, CBM received a warranty deed for property located at 2159 St. Rt. 511, Vermillion Township, Ashland County, Ohio. The deed was recorded on October 16, 2001. Prior to purchasing the property, a representative of CBM contacted Robert Killey, the zoning inspector for Vermillion Township. CBM inquired as to the procedure for securing zoning permits needed to build a broadcast tower. Killey advised CBM the township did not regulate the construction of towers and did not exercise any authority relative thereto. CBM contacted Killey a second time, and was again informed the same. CBM did, however, apply and receive a permit for the building being constructed in conjunction with the tower.
{¶ 4} On the day representatives of CBM met with Killey to complete the building permit, Trustee Gerald Young appeared at Killey's office on personal business. Killey explained the situation to Young, who indicated Killey was handling the situation appropriately. Young was under the assumption the township zoning regulations was overruled by public utilities law, and believed the permits CBM had received from the FCC were sufficient to authorize the building of the tower. Prior to the construction of the CBM tower, there were at least five other towers in Vermillion Township, and neither the zoning board nor the zoning inspector had issued permits for those structures.
{¶ 5} At an October 15, 2001 meeting of the Board, several township residents asked about the construction of the tower. The Board informed the citizens the township had no jurisdiction "over anything that is related to federal communication." Minutes of October 15, 2001 Board meeting. At a public meeting on November 19, 2001, the issue of the tower again was raised. After some discussion, the Board decided to stop any further proceedings relative to the tower. Minutes of November 19, 2001 Board meeting. At a Board meeting on January 7, 2002, residents questioned the Board about the tower. The Board decided to request a legal opinion from the prosecutor.
{¶ 6} Subsequently, on March 18, 2002, the Board filed a Complaint in the Ashland County Court of Common Pleas against CBM. The complaint set forth four causes of action, to wit: a statutory action pursuant to R.C. 519.24, alleging violations of the township zoning regulations as a result of the CBM's failure to secure a zoning permit; a statutory action pursuant to R.C.519.211, alleging violations of the notice requirement set forth therein; and two causes of action for private and public nuisance. CBM filed a timely answer, and the matter proceeded through discovery. CBM filed a Motion for Summary Judgment on September 16, 2002. The Board filed a response thereto. Via Judgment Entry filed March 26, 2003, the trial court overruled CBM's motion. CBM filed a Request for Clarification of Ruling and Request for Ruling on all Portions of Motion. The Board requested leave to file a motion for summary judgment, which the trial court granted. The Board filed its motion on April 21, 2003. CBM filed a motion in opposition thereto. Via Judgment Entry filed October 3, 2003, the trial court granted the Board's motion for summary judgment.
{¶ 7} It is from the March 26, 2003, and October 3, 2003 Judgment Entries CBM appeals, raising the following assignments of error:
{¶ 8} "I. The trial court erred in denying appellant's motion for summary judgment.
{¶ 9} "II. The trial court erred in granting appellee's motion for summary judgment.
{¶ 10} "III. The trial court erred in ruling no genuine issues of material facts remained, or in resolving all issues of fact in appellee's favor as the non-moving party.
{¶ 11} "IV. The trial court erred in applying the requirements of R.C. 519.211 to the tower in question.
{¶ 12} "V. The trial court erred in determining that R.C.519.211 applied as a matter of "public policy," without considering the definitions contained in the statute or whether those definitions applied to the parties.
{¶ 13} "VI. The trial court erred in deciding the 1999 amendments to the vermillion township zoning regulations were adopted by the township trustees.
{¶ 14} "VII. The trial court erred in deciding the 1999 amendments to the vermillion township zoning regulations were not required to be approved by the voters of the township.
{¶ 15} "VIII. The trial court erred in concluding the township "substantially" complied with the ohio law concerning amendment of its zoning regulations.
{¶ 16} "IX. The trial court erred in determining the cbm tower was a nuisance.
{¶ 17} "X. The trial court erred in failing to dismiss the non-party claims of private citizens.
{¶ 18} "XI. The trial court erred in failing to dismiss all private nuisance claims.
{¶ 19} "XII. The trial court erred in dismissing the cbm claim that the zoning regulations are an unconstitutional taking of property."
 I-XII
{¶ 20} CBM's assignments of error raise three general issues which are integral to the disposition of this appeal. Those issues are: 1) the applicability of R.C. 519.211 to the instant action; 2) the validity of the January 1, 1999 Amendment to the Vermillion Township Zoning Regulations; and 3) whether the tower constitutes a public and/or private nuisance. We shall address each issue in turn.
{¶ 21} A public utility is exempt from township zoning regulations pursuant to R.C. 519.211(A). However, R.C. 519.211(B) through (E) grants limited authority to a board of township trustees or a board of zoning appeals over telecommunication towers owned by public utilities.
{¶ 22} R.C. 519.211 provides:
{¶ 23} "(B)(1) As used in this division, "telecommunications tower" means any free-standing structure, or any structure to be attached to a building or other structure, that meets all of the following criteria:
{¶ 24} "(a) The free-standing or attached structure is proposed to be constructed on or after October 31, 1996.
{¶ 25} "(b) The free-standing or attached structure is proposed to be owned or principally used by a public utility engaged inthe provision of telecommunications services.
{¶ 26} "(c) The free-standing or attached structure is proposed to be located in an unincorporated area of a township, in an area zoned for residential use.
{¶ 27} "(d)(i) The free-standing structure is proposed to top at a height that is greater than either the maximum allowable height of residential structures * * * or the maximum allowable height of such a free-standing structure * * *.
{¶ 28} "(ii) The attached structure is proposed to top at a height that is greater than either the height of the building or other structure to which it is to be attached, or the maximum allowable height of such an attached structure as set forth in any applicable zoning regulations in effect immediately prior to October 31, 1996, or as those regulations subsequently are amended.
{¶ 29} "(e) The free-standing or attached structure is proposed to have attached to it radio frequency transmission or reception equipment. * * *
{¶ 30} "(3) Any person who plans to construct a telecommunications tower in an area subject to township zoning regulations shall provide both of the following by certified mail:
{¶ 31} "(a) Written notice to each owner of property, * * *, whose land is contiguous to or directly across a street or roadway from the property on which the tower is proposed to be constructed, stating all of the following in clear and concise language:
{¶ 32} "(i) The person's intent to construct the tower;
{¶ 33} "(ii) A description of the property sufficient to identify the proposed location;
{¶ 34} "(iii) That, no later than fifteen days after the date of mailing of the notice, any such property owner may give written notice to the board of township trustees requesting that sections 519.02 to 519.25 of the Revised Code apply to the proposed location of the tower as provided under division (B)(4)(a) of this section. * * *
{¶ 35} "(b) Written notice to the board of township trustees of the information specified in divisions (B)(3)(a)(i) and (ii) of this section. The notice to the board also shall include verification that the person has complied with division (B)(3)(a) of this section."
{¶ 36} The trial court did not decide the issues of whether CBM is "a public utility engaged in the provision of telecommunications services" and whether the CBM broadcast tower is a "telecommunications tower" for purposes of R.C. 519.211. Rather, the trial court decided: * * * this type of tower, as a matter of public policy, must be regulated by this statute. The proliferation of towers generally is certainly an issue of public concern which should be properly regulated, so as to address both safety and esthetic issues. Therefore, as a matter of public, this Court finds that the definitions of both public utility and telecommunications tower, for purposes of Ohio Revised Code Section 519.211, do apply."
{¶ 37} We find the trial court exceeded its authority in determining the statute applied as a matter of public policy, when, by the terms of the statute such does not apply to the tower at issue herein. It is the job of the legislature to determine issues of public policy. Accordingly, we find the trial court erred in its determination R.C. 519.211 applied to the case sub judice.
{¶ 38} We now turn to the issue of whether the zoning amendment of January 1, 1999, was valid. The last sentence of the amendment provides, "This ordinance shall take affect immediately upon approval of the electors as provided by Ohio Revised K2519-11." The Board did not present any evidence establishing the adoption of the January 1, 1999 amendment by the township trustees or its approval by the voters. Absent such evidence, we find the trial court erred in analyzing this case under the amendment and remand the matter to the trial court for analysis under the 1956 zoning regulations.
{¶ 39} We now turn to the issue of whether the Board established the tower was a nuisance. The parties presented conflicting evidence regarding the sufficiency of the design and structure of the tower. The Board argues the submitted evidence showed CBM never had soil testing conducted to make sure the tower was safe. CBM counters such failure does not make the tower per se unsafe. We find a genuine issue of material fact exists as to whether the tower is or is not safe. If the tower is not safe, the Board could potentially have a nuisance claim. However, such determination of this issue is premature at the summary judgment stage of the proceedings. Accordingly, we reverse the trial court's finding the tower was a nuisance and remand the matter to the trial court.
{¶ 40} The judgment of the Ashland County Court of Common Pleas is reversed and the matter remanded for further proceedings in accordance with the law and this opinion.
Hoffman, J., Gwin, P.J. and Farmer, J. concur.
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Ashland County Court of Common Pleas is reversed and the matter remanded for further proceedings in accordance with the law and this opinion. Costs assessed to appellee.